UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMBER E. MILLINER,

             Plaintiff,

      -against-                                   REPORT AND RECOMMENDATION

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,        16 CV 5744 (PKC) (KNF)

             Defendant.
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE P. KEVIN CASTEL, UNITED STATES DISTRICT JUDGE

      Amber E. Milliner ("Milliner") commenced this action against the Commissioner of Social Security ("Commissioner") seeking review of an administrative law judge's ("ALJ") decision, dated October 14, 2014, finding her ineligible for supplemental security income ("SSI") benefits, pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385. The ALJ's decision became final on May 18, 2016, when the Appeals Council denied Milliner's request for review. This action followed. Before the Court is the Commissioner's motion for judgment on the pleadings, made pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The plaintiff, who is proceeding pro se, has not opposed the motion.

      An administrative hearing was held on June 19, 2014, before ALJ Vincent Casio, at which Milliner, represented by counsel, testified. A vocational expert, Helene Feldman ("Feldman"), also testified at the hearing. The issue before the ALJ was whether Milliner is disabled. Following a review of the plaintiff's submissions and the record in this case, the ALJ determined that Milliner: (1) has not engaged in substantial gainful activity since November 21, 2012, the date on which her alleged disability began; (2) has severe physical impairments,

1

namely, fibromyalgia, status post left knee arthroscopy, status post right hip surgery with two pins, lower back pain, obesity, anemia, left knee degenerative joint disease, osteoarthritis of the bilateral hips, bilateral trochanteric bursitis, herniation of L4-L5 of the lumbar spine, lumbar radiculopathy, sacroiliac joint disease, and seizures; however, her "medically determinable mental impairments of adjustment disorder with depressed mood, mild episodic and pain disorder with general medical condition," did not cause more than a minimal limitation in her ability to perform basic mental work activities and were, therefore, non-severe; (3) does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity to perform sedentary work as defined in 20 CFR § 416.967(a) except she can occasionally balance, stoop, kneel, crouch, crawl and climb ramps, stairs, ladders, scaffolds and ropes; however, she must avoid unprotected heights and hazardous machinery; (5) has no past relevant work; (6) was born on March 19, 1984, and was 28 years old, which is defined as a younger individual age 18-44, on the date her application was filed; (7) has at least a high school education and is able to communicate in English. The ALJ also found that transferability of job skills was not an issue in Milliner's case because she does not have past relevant work and, considering her age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform. The ALJ concluded that Milliner had not been under a disability from November 21, 2012, the date her application was filed, through the date of the decision, that is, October 14, 2014.

## BACKGROUND

At the hearing before the ALJ, Milliner testified that she was thirty years old and lived with a friend in a basement apartment. She stated that she receives assistance from social

services and Medicaid. According to Milliner, she completed high school and, in 2008, received a certificate for training in security work. Millner stated that she is 5'7" tall and weighed 298 pounds, although her weight fluctuates 10 to 15 pounds.

Milliner testified that she last worked as an instructor for a children's dance class from October 2009 to May 2010. She also worked in the deli department of Walmart for two years, at a Subway restaurant for one year and at a McDonald's restaurant for an unspecified period of time. Since 2011, Milliner has not worked because she can stand for only short periods of time, due to sharp pains in her groin. In addition, Milliner reported that she can stand or sit for only ten minutes, before her left leg becomes numb. She can walk for ten minutes, before she has to sit down, and can bend over and pick up certain things; however, bending at the waist is difficult and painful. Milliner testified that she had difficulty using her hands because of her fibromyalgia and that her arms went numb if she lifted them over her head. Milliner asserted that her fibromyalgia made her feel "achy." Milliner is able to go up and down stairs, but only one leg at a time. She denied having an addiction to drugs or alcohol and, other than depression, has no mental health condition. According to Milliner, her inability to work depressed her and two years previously her family doctor prescribed Cymbalta for her; however, she has not taken the medication since that time.

Milliner stated that she underwent surgery when she was ten (10) years old and, as a result, she has pins in both hips. She stated that she believed that being overweight affected her and might be the cause of her hip pain. When asked whether she considered gastric bypass surgery for her weight, Milliner stated that she thought about it but was trying to lose weight on her own through diet.

3

Milliner stated that her back problems started in or about 2008. She explained that she had a herniated disc in her back. As a result, Milliner considered having surgery for that condition on four or five occasions, over the years, but her doctor advised against it and urged her to get a second opinion. Milliner recounted tearing the meniscus in her left knee, for which she had surgery in 2012, and that she experienced pain in her knees every day.

Milliner testified that her neurologist was treating her for epilepsy and that she had a seizure in March 2014; on that occasion, her roommate found her lying on the floor and helped her up. She did not go to the hospital after the seizure and did not think her neurologist was prescribing seizure medication.

Milliner testified that she goes to church every Sunday, for three hours, and that she is able to drive for one-half hour at a time. According to Milliner, she needs help with household chores and has to sit when she washes dishes. Milliner also stated that she sometimes cooks and goes shopping. She dresses and bathes herself and, during the day, she watches television, reads, or listens to music.

Vocational expert Feldman also testified at the hearing, via telephone. The ALJ asked Feldman to consider a hypothetical individual with the same age, education and work history as the plaintiff who could perform sedentary work "except the person is limited to occasional climbing of ramps, stairs, ladders and ropes [and] . . . can occasionally balance, stoop, kneel, crouch and crawl, and . . . should avoid unprotected heights and hazardous machinery." Feldman testified that several sedentary positions existed in significant numbers in the national economy that such an individual could perform, including assembler, plastic design applier and charge account clerk.

4

## ALJ'S DECISION

In finding that Milliner's mental impairments were not severe, the ALJ considered the records of consultative examining psychologist Leslie Helprin, Ph.D. ("Dr. Helprin"). The ALJ noted that Dr. Helprin determined that Milliner had a good appearance, appropriate and focused eye contact, fluent and clear speech and coherent and goal directed thought processes with no evidence of hallucinations, delusions, or paranoia. According to the ALJ, Dr. Helprin diagnosed the plaintiff with adjustment disorder with depressed mood that was mildly episodic. The ALJ took note of Dr. Helprin's view that Milliner had no limitations in her ability to follow and understand simple directions and instructions, perform simple or complex tasks, maintain attention and concentration despite her pain, and maintain a regular schedule as pertained to her psychiatric and cognitive outlooks. Dr. Helprin also found that the plaintiff could make appropriate decisions, relate well with others and deal appropriately with stress.

The ALJ also considered the records of examinations performed by Dr. Ralph Alvarez ("Dr. Alvarez"), an internist, who found that, although the plaintiff appeared to be depressed, no evidence existed of impaired judgment or significant memory impairment, and L. Hoffman, Psy.D., who performed a Psychiatric Review Technique and Mental Residual Functional Capacity assessment of the plaintiff, and found that she had no limitations of activities of daily living, social functioning, or concentration, persistence and pace.

The ALJ also noted that, in April 2014, the plaintiff was examined by Dr. Paul Saladino ("Dr. Saladino"). According to Dr. Saladino, the plaintiff was oriented to person, place and time, had socially appropriate interpersonal behavior, and no evidence of psychomotor disturbance. He also found that her speech was normal and her judgment and insight were intact.

5

In finding that Milliner has the residual functional capacity to perform sedentary work, the ALJ considered Milliner's treatment records dating back to August 2008, including her treatment history under the care of Dr. Kenneth Rauschenbach ("Dr. Rauschenbach"), an osteopath. More recent treatment notes, beginning in 2012, showed that Milliner suffered hip and knee pain. An MRI of her left knee confirmed the existence of a tear of the medial meniscus. Dr. Rauschenbach ordered an MRI of the lumbar spine, which showed a disc herniation resulting in the deformity of the thecal sac at L4-L5. Due to the meniscal tear, Milliner underwent left-knee arthroscopy with partial medial meniscectomy. Milliner missed five postoperative appointments but, as of September 2012, she reported that the knee felt very good, she was not numb and had good range and pulses.

Milliner returned to Dr. Rauschenbach in November 2012, due to severe pain in her lower back that radiated down her left leg. Upon examination, Dr. Rauschenbach observed that Milliner was morbidly obese. The ALJ noted that Dr. Rauschenbach did not think Milliner had many treatment options and that she was capable of sedentary work.

Milliner was admitted to the emergency room at St. Luke's Cornwall Hospital in November 2012, after suffering two seizures, each lasting about 10 minutes. The ALJ noted that during the seizures, the plaintiff's eyes rolled back in her head and she was shaking. However, Milliner had no history of seizures and denied having a headache, shortness of breath, palpitations, chest pain, nausea, or vomiting. A computerized tomography (CT) scan of her brain was normal. Milliner returned to the St. Luke's Cornwall Hospital emergency room on December 3, 2012, having suffered another seizure. A physical examination of Milliner was normal. Milliner had a consultation with Christos Lambrakis, M.D. ("Dr. Lambrakis"). Dr. Lambrakis determined that Milliner had suffered a loss of consciousness and experienced shaking movements of her extremities. She denied a prior history of seizures, premonitory symptoms or postictal confusion. Dr. Lambrakis administered an

6

EEG, which was normal. Upon examination, Milliner reported back pain. Her gait was normal and no sensory deficits were noted; however, she reported anxiety and depression. The cause of her seizures was indeterminable, as all testing was unremarkable; Milliner was reluctant to take anti-seizure medication.

Milliner saw Dr. Rauschenbach in February 2013. At that time, she complained of severe bilateral hip pain, left-sided leg pain with numbness and tingling, and intermittent giving way of the knee. She limped favoring her left side. The pain radiated across her groin and thigh and into her medial knee. She also complained of constant back pain. Dr. Rauschenbach administered steroid injections. Milliner saw Dr. Rauschenbach again in February 2013. On that occasion, he opined that the plaintiff would always have limited motion, but was capable of sedentary work for four hours a day. In November 2013, Milliner complained to Dr. Rauschenbach of continuing left-sided hip and groin pain. X-rays taken that day showed good alignment and position of the hips. Dr. Rauschenbach opined chronic mild-to-moderate arthritis exacerbated by the plaintiff's morbid obesity, intermittent radicular symptoms down the left leg, and a disc bulge at L4-L5.

The ALJ considered the report of an April 2013 consultative examination of the plaintiff by Dr. Alvarez. The plaintiff was examined by Dr. Alvarez at the request of the Social Security Administration. Milliner reported a history of bilateral hip pain and lower back pain. Dr. Alvarez opined that the plaintiff was in no acute distress but had an abnormal gait with a limp favoring her left side. Dr. Alvarez observed that the plaintiff was able to get up on her heels and toes, partially, and squat to half, partially; however, she had a normal stance and used no assistive devices. Despite her limitations, the plaintiff had a full range of motion of her elbows, forearms, wrists, hips, knees and ankles, and non-tender joints. Dr. Alvarez opined that the plaintiff had mild to moderate restrictions for walking, squatting, getting up from a supine position, bending, lifting, carrying, flexing and extending her back, due to a history of lower back pain and obesity.

The ALJ also considered the reports of Dr. Ramesh Damacharla ("Dr. Damacharla") of St. Luke's Cornwall Hospital. The plaintiff saw Dr. Damacharla during the period 2010 through 2013. In 2013, the plaintiff saw Dr. Damacharla in August, September, October, November and December; on these visits, the plaintiff complained of hip and back pain along with pain in her neck, legs and arms.

The ALJ noted that a medical source statement of the plaintiff's physical ability to do work-related activities was prepared by Dr. Syed Nasir ("Dr. Nasir") in August 2011. Dr. Nasir opined that the plaintiff can never lift or carry any weight, due to severe diffuse body pain and ulnar neuropathy. Dr. Nasir added that the plaintiff could sit and stand for 15 minutes and walk for 10 minutes at one time and sit, stand and walk for one hour each in an eight-hour workday. Dr. Nasir found that the plaintiff could never push, pull, feel, finger, handle, reach, or reach overhead with either hand and could never use either foot to operate foot controls.

A physical assessment for determination of employability was completed by Dr. Nasir in February 2013. Dr. Nasir wrote that the plaintiff complained of severe lower back pain, neck pain and seizures, noting that she had a tender lower back. He diagnosed her with cervical and lumbar radiculopathy and seizures. He opined that her exertional function was limited to less than sedentary, meaning she can lift less than ten pounds, stand or walk less than two hours per day and sit for less than six hours per day. He added that the plaintiff was not capable of participating in work activities at least through December 2013.

Additional examinations by Dr. Nasir in December 2013, and January through June of 2014, found the plaintiff complaining of headaches and pain in the lower back that was severe. Dr. Nasir found, repeatedly, normal neurological results, cortical functions and motor and sensory strength. Dr. Nasir assessed the plaintiff with generalized convulsive epilepsy, cervical radiculitis, ulnar nerve neuropathy and lumbosacral radiculopathy. Dr. Nasir recommended medication management and physical therapy to address Milliner's medical conditions.

In July 2013, the plaintiff began seeing Dr. Saladino, who diagnosed her with fibromyalgia, chronic pain and morbid obesity. After falling on ice in February 2014, the plaintiff saw Dr. Saladino to evaluate her right knee pain and bilateral hip pain. An x-ray of the right knee showed no acute fracture or dislocation but did show moderate degenerative changes.

After considering the evidence, the ALJ determined that Milliner's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible because: (a) she described daily activities which were not limited to the extent one would expect given her complaints of disabling symptoms and limitations, for example, she was able to dress, bathe and groom herself, drive, manage her own money, socialize and attend church services; also, she knew how to perform various activities of daily living, such as cooking and cleaning, but did not perform these tasks because of pain; (b) although she had received treatment for her alleged disabling impairments, the treatment had been, essentially, routine. Thus, since the application date she had not been hospitalized for reasons relating to her physical impairments and had not undergone any surgical procedures. At the same time, she had been treated repeatedly with medications and told on numerous occasions that she needed to lose weight in order to reduce the stress placed on her lower back, hips, knees and feet; (c) the record did not contain any non-conclusory opinions supported by clinical or laboratory evidence from treating or examining physicians indicating that Milliner is disabled; (d) a review of Milliner's work history showed that she worked only sporadically prior to the alleged disability onset date, which raised the question whether her unemployment was actually due to medical impairments; and (e) she betrayed no evidence of debilitating symptoms while testifying at her hearing. Although Milliner's behavior at the hearing could not be considered a conclusive indicator of her overall level of functioning on a day-to-day basis, the ALJ noted that it was permissible to consider the apparent lack of debilitating symptoms, among other factors, in reaching a conclusion concerning the credibility of the plaintiff's allegations.

The ALJ gave "great weight" to the opinion of Dr. Alvarez, whose finding supported the assessment of sedentary residual functional capacity with postural limitations. The ALJ noted that Dr. Alvarez had examined the plaintiff personally and his findings were consistent with the voluminous medical evidence of record. The ALJ gave "little weight" to Dr. Nasir's medical source statements because his opinions were conclusory and mostly inconsistent with the medical records as a whole.

## DEFENDANT'S CONTENTIONS

The Commissioner contends that the ALJ found, correctly, that Milliner was not disabled from November 21, 2012, the date on which she alleged she became disabled, through October 14, 2014, the date of the ALJ's decision. According to the Commissioner, the ALJ determined, properly, that the plaintiff did not have any severe mental impairments. In reaching this conclusion, the Commissioner asserts, the ALJ determined, correctly, that Milliner had only a mild limitation in her activities of daily living, a mild limitation in the area of social functioning, a mild limitation in the area of concentration, persistence or pace, and no decompensation. The Commissioner contends that the ALJ referred to the findings of the consultative examining psychologist Dr. Helprin to determine that the plaintiff had intact attention and concentration and only mildly impaired memory skills due to pain.

The Commissioner contends further that the ALJ's determination of the plaintiff's residual functional capacity was supported by substantial evidence. According to the Commissioner, the ALJ discussed the medical opinion evidence, taking into account the relevant factors to be considered in determining what weight to afford a medical opinion, and accorded "great weight," properly, to the opinion of the consultative examiner, Dr. Alvarez, and "little weight" to the opinion of Dr. Nasir, the plaintiff's neurologist.

10

According to the Commissioner, the ALJ's credibility finding concerning the plaintiff's allegations of disability was proper; the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to be the cause of the alleged symptoms but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.

## DISCUSSION

### *Legal Standard*

"After the pleadings are closed - but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Charter, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the [Social Security Administration's] regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

11

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"Because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Melville, 198 F.3d at 51. The Social Security Administration's regulations require that the ALJ develop the claimant's complete medical history and "make every reasonable effort" to assist the claimant in obtaining medical records. 20 C.F.R. §§ 404.1512(b), 416.912(b).

12

## *Application of Legal Standard*

Upon review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and the ALJ did not make any error of law in determining Milliner's claim. Milliner's medical evidence demonstrates that she does not have any severe mental impairment; rather, the evidence showed that the plaintiff was able to engage in activities of daily living, such as dressing, bathing, managing money, driving and regularly attending church services, and had only a mild limitation in the areas of social functioning and concentration, persistence and pace. Thus, as noted by Dr. Helprin, the plaintiff had no limitation in her ability to understand directions, perform simple or complex tasks and maintain attention and concentration despite her pain. In addition, Milliner's medical evidence demonstrates that she has the residual functional capacity to perform sedentary work, with the noted limitations. The ALJ assigned proper weight to the medical evidence and credited, properly, the opinions of Dr. Rauschenbach and Dr. Alvarez, both of whom opined that Milliner was capable of sedentary work. The ALJ also rejected, properly, Dr. Nasir's opinion that Milliner was capable of less than sedentary work because the opinion was conclusory and inconsistent with the medical evidence.

The ALJ also found, properly, based on the determination of the vocational expert in this case, and considering Milliner's age, education, work experience and residual functional capacity, that jobs exist in significant numbers in the national economy that Milliner can perform. Accordingly, the ALJ's decision is warranted.

## RECOMMENDATION

For the reasons set forth above, I recommend that the Commissioner's decision be affirmed and the defendant's motion for judgment on the pleadings, Docket Entry No. 11, be granted.

13

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, 500 Pearl Street, Room 1020, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Castel.

*Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.* See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
July 31, 2017

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Amber Milliner